**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**CYNTHIA BAILEY**,

Plaintiff,

v.

**I.G. INCORPORATED, a Minnesota corporation, and MULTEK, INC., a foreign corporation**,

Defendants.

Civil No. 02-470 (MJD/JGL)

**REPORT AND RECOMMENDATION**

---

APPEARANCES

Steven A. Smith, Esq., on behalf of Plaintiff
Chad W. Strathman, Esq., on behalf of Defendant I.G. Incorporated
Mark S. Mathison, Esq., on behalf of Defendant Multek, Inc.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before Chief United States Magistrate Judge Jonathan Lebedoff on July 11, 2003 on Defendant I.G. Incorporated's Motion for Summary Judgment (Docs. No. 48 and 62) and Defendant Multek, Inc.'s Motion for Summary Judgment (Doc. No. 53). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and D. Minn. LR 72.1.

## I. INTRODUCTION

Plaintiff Cynthia Bailey ("Bailey"), an African-American woman, was employed by I.G. Incorporated d/b/a Industrial Staffing ("Industrial").

FILED 7-17-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

Industrial is a temporary employment agency that places employees at work sites in the Twin Cities area. Industrial hired Bailey on January 7, 2002 and placed her in a janitorial position at Multek, Inc. ("Multek"). Bailey ceased working at Multek on January 30, 2002. In her Amended Complaint, Bailey alleges against both Defendants claims of race discrimination under the Minnesota Human Rights Act ("MHRA"), 42 U.S.C. § 1981, and Title VII, and reprisal discrimination under the MHRA and Title VII. Against Multek, Bailey also alleges aiding and abetting discrimination under Minn. Stat. § 363.03, subd. 6.

## II. FACTUAL BACKGROUND

For the purpose of summary judgment, the court views the facts in the light most favorable to Bailey, the non-moving party. Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997) (citations omitted).

Industrial is a temporary employment agency that places employees in light industrial positions at job sites in the Twin Cities. (Josephes Dep. at 14-16.) Industrial hired Bailey even though she did not have a social security card because she was able to provide a receipt stating that she was applying for a social security card. (Bailey Dep. at 40 & Ex. 3.) Industrial placed Bailey in a janitorial position at Multek on January 7, 2002. She worked the second shift and reported to Bill Adams during her shift. (Bailey Dep. at 61; Adams Dep. at 12; Joncas Dep. at 39-41.)

On January 30, 2002, Adams became upset when Bailey told him she could not access the trash compactor because of pallets of wire and trash that other employees had left in front of it. (Bailey Dep. at 9-10, 65.) Bailey walked away to get her cleaning cart, but Adams told her to get the trash bags out of the way. (Bailey Dep. at 65.) Bailey could not get the trash bags, however, because the trash bin that she was pushing was already full, and she could not dispose of the trash in her trash bin because the path to the trash compactor was blocked. (Bailey Dep. at 65.) Adams and Bailey began to argue, and Adams said that employees should not be bringing their own trash to the trash compactor. (Bailey Dep. at 77.) Adams said to Bailey, "get it, you stupid nigger." (Bailey Dep. at 10, 66.) Bailey felt humiliated and degraded, like "an animal and not a human." (Bailey Dep. at 18.) Bailey began to cry. (Bailey Dep. at 79.) Adams and Bailey walked to the janitorial closet where they reviewed Bailey's list of job duties and discussed whether Bailey was responsible for collecting trash from employees' offices. (Bailey Dep. at 66-67.) Bailey did not yell or curse during the exchange. (Bailey Dep. at 84.)

At some point, Adams told Bailey to leave the premises, but Bailey said she wanted to file a complaint first. (Bailey Dep. at 75.) Adams told her she could file a complaint in the morning. (Bailey Dep. at 75.) Adams apparently called Jim Rector, Bailey's direct supervisor at Multek. (Bailey Dep. at 84; Rector Dep. at 17-18.) When Rector arrived, Bailey was still crying and

could hardly talk. (Bailey Dep. at 86.) Bailey explained to Rector what had happened, and Rector told Bailey that he himself had "stopped using that word years ago." (Bailey Dep. at 81, 86.) Rector apologized to Bailey for Adams' comment and said that Adams was known for being hard on people. (Bailey Dep. at 86.) Adams then joined Rector and Bailey in Rector's office, and Rector suggested that Adams may not have meant to say the phrase he did. (Bailey Dep. at 88.) Rector called for a cab to take Bailey home, and he took her access card until "the problem" could be resolved. (Bailey Dep. at 89, 91, 94.)

The next day, January 31, 2002, Pamela Joncas of Multek called Industrial and informed them that Bailey should not return to Multek because she had refused to perform her duties and had disrupted the workplace. (Joncas Dep. at 43.) Joncas requested a replacement employee, and the decision to replace Bailey was made before Joncas began an investigation of the events. (Joncas Dep. at 36.) An unidentified person at Industrial then called Bailey at 8:00 a.m. that morning. (Bailey Dep. at 94-95.) This person told her that she would not be returning to Multek because of "the incident." (Bailey Dep. at 95.) Bailey said she wanted to file a complaint, and she asked if she still worked for Industrial. (Bailey Dep. at 95.) The person said that Bailey no longer worked for Industrial, but she could come to the office and file a complaint. (Bailey Dep. at 95.)

That day, Bailey went to Industrial and spoke with Kathlyn Josephes. (Bailey Dep. at 101; Josephes Dep. at 32.) When Bailey told Josephes that she was called a nigger at Multek, Josephes said, "well, I've been called worse than that." (Josephes Dep. at 32; Bailey Dep. at 101.) Josephes said that Bailey could not file a complaint until she calmed down. (Bailey Dep. at 101-02.) Josephes snatched the paperwork from Bailey's hand, and the two women engaged in a tug-of-war over it. (Bailey Dep. at 102.) Bailey was crying and upset, but she did not use profanity. (Bailey Dep. at 103.) At the end of the meeting, Josephes told Bailey that Industrial would not place her with another company. (Bailey Dep. at 114.)

After Bailey left the office, Josephes decided that Bailey would never work for them again, based on the meeting with Bailey and her failure to update her Social Security I-9. (Josephes Dep. at 36.) Bailey knew that her Social Security receipt had expired on January 24, 2002. (Bailey Dep. at 97.) Bailey had actually received her permanent card on January 29th, but she had not brought it to Industrial. (Bailey Dep. at 98.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is "material" if it must ultimately be resolved and if its resolution will determine the outcome of the case. Id. Materiality is determined by examining the substantive law of the claims. Id.

The non-moving party may not rest upon the pleadings alone as a response but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party may not rely on mere allegations or denials but must present specific facts. Id.; Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999) (citations omitted). Additionally, the movant is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Finally, the Court notes that summary judgment is rarely appropriate in employment discrimination cases because such cases "are inherently fact based." Hindman v. Transkrit Corp. 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted).

## IV. DISCUSSION

### A. Exhaustion of Administrative Prerequisites

Both Multek and Industrial argue that Bailey failed to exhaust her administrative remedies prior to filing her federal lawsuit. Bailey commenced this case more than eight months before filing a charge of discrimination with the EEOC. When she did file her charge, she requested and received immediate issuance of a right to sue letter. The EEOC indicated that it would not be able to investigate her charge within 180 days. Defendants argue that this action by the EEOC violated its legislative mandate.

First, Defendants have overlooked the fact that the EEOC charge was filed and a right to sue letter was issued before Bailey's complaint was amended to add the Title VII claim. Second, the EEOC acted in accordance with 29 C.F.R. § 1601.28(a)(2), which permits it to issue a right to sue letter before the expiration of the 180-day period if it determines that it will not be able to process the charge within 180 days. Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1061 (11th Cir. 1994); Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th Cir. 1984); see also EEOC v. Assoc. Dry Goods Corp., 449 U.S. 590, 595 n.6 (1981) (referencing the regulation without qualification or disfavor); but see Martini v. Fed. Nat'l Mortgage Ass'n, 178 F.3d 1336, 1347 (D.C. 1999) (finding the regulation invalid). Third, dismissing Bailey's suit at this time would be purposeless and judicially

inefficient. The 180-day period has now expired, and Bailey would simply refile her claim.

**B. <u>Bailey's Race Discrimination Claims</u>**

**1. <u>Bailey's Employer</u>**

Multek argues that Bailey was not its employee, and thus, she is not entitled to sue Multek under Title VII. Title VII defines an employee as a person "employed by an employer." 42 U.S.C. § 2000e(f). Factors used to determine whether an employer-employee relationship exists include

> whether the hiring party has the "right to control the manner and means by which a task is accomplished[;] . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
> party is in business; the provision of employee benefits; and the tax treatment of the hired party.

<u>Schweiger v. Farm Bur. Ins. Co. of Neb.</u>, 207 F.3d 480, 484 (8th Cir. 2000) (citations omitted). The Court finds that both Multek and Industrial were Bailey's employer.

There can be no real argument that Industrial was Bailey's employer. Industrial hired Bailey and paid her wages, taxes, and benefits, and

Industrial decided to place Bailey at Multek. In addition, Title VII explicitly pertains to employment agencies. 42 U.S.C. § 2000e-2(b). With respect to Multek, Bailey performed her job duties at Multek's facility. Multek controlled the premises, tools, and instrumentalities of Bailey's work. Bailey relied on Multek employees for training, job duties, and other information necessary to perform her job. Multek controlled the number of hours Bailey worked and the hours she was paid to work. Multek called Industrial and said that Bailey could not return to work. Although not every factor applies to Multek, in looking at the totality of the relationship, the Court finds that Multek was also Bailey's employer in the context of her discrimination claims. Courts have often found temporary employees to be "employees" under Title VII. Callicut v. Pepsi Bottling Group, Inc., No. 00 cv-95 (DWF/AJB), 2002 WL 992757, at *8 (D. Minn. May 13, 2002) (citing Reynolds v. CSX Transp., Inc., 115 F.3d 860, 869 n.12 (11th Cir. 1997), vacated on other grounds, 524 U.S. 947 (1998); Freeman v. Kansas, 128 F. Supp. 2d 1311, 1316 (D. Kan. 2001); Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F. Supp. 344, 348-49 (S.D.N.Y. 1984)).

**2. Bailey's Title VII, MHRA, and § 1981 Claims**

Bailey acknowledges that the Court's analysis of her Title VII, MHRA, and § 1981 claims should be done pursuant to Title VII case law. Ross v. Kan. City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002) (citations

omitted); Mems v. City of St. Paul Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000) (citations omitted). In this framework, Bailey is asserting a hostile work environment claim based on racial discrimination. A plaintiff may establish a Title VII hostile work environment claim based on race discrimination. Dowd v. United Steelworkers of Am., Local No. 286, 253 F.3d 1093, 1101 (8th Cir. 2001). Title VII prohibits discrimination against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where a plaintiff relies on circumstantial evidence of discrimination, courts apply the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792 (1973); Williams v. Thomson Corp., No. 00-cv-2256 (MJD/SRN), 2003 WL 1571559, at *10 (D. Minn. Mar. 21, 2003). The plaintiff bears the initial burden of proving a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. The defendant then has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. Finally, the plaintiff must show that the defendant's proffered reason was a pretext for discrimination. Id. at 804.

To establish a prima facie case of race discrimination based on a hostile work environment, Bailey must show (1) she is a member of a protected group; (2) she received unwelcome harassment; (3) a causal nexus exists between the harassment and her status as a member of a protected group; and

(4) the harassment affected a term, condition, or privilege of employment. Bradley v. Widnall, 232 F.3d 626, 631 (8th Cir. 2000). The plaintiff must also show that the employer knew or should have known about the harassment and failed to take prompt and remedial action. Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999).

**a. Severe or Pervasive Harassment**

Defendants first argue that Bailey has failed to establish that she was subjected to severe or pervasive racial harassment. Harassment is defined as conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986)). The conduct must be objectively and subjectively abusive. Id. at 21-22. Whether conduct is hostile is determined by considering all the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. To prove this aspect of her claim, Bailey relies on the "nigger" comment by Adams, Rector's statement that he had stopped using that word years ago, and Josephes' comment that she had been called worse than "nigger."

Rector's and Josephes' statements cannot be classified as harassing or abusive. There is no evidence that Bailey considered these statements to be harassing or abusive. At most, the comments were made in an attempt to neutralize the situation. On the other hand, Adams' use of the word "nigger" was reprehensible. Defendants cite numerous cases finding that a single utterance of an objectionable statement is not actionable as harassment. However, these cases are distinguishable from the present case. See, e.g., Burkett v. Glickman, 327 F.3d 658, 661 (2003) (no evidence that the plaintiff was present when racial epithets were made); Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843-44 (8th Cir. 2002) (involving a plaintiff who chose not to report the incidents and declined his manager's offer to fire the offending employee); Gipson v. KAS Snacktime Co., 171 F.3d 574, 579 (8th Cir. 1999) (where the racial comment was a reference to "your kind"). Defendants' strongest support is found in an unpublished decision, Bailey v. Augustine Med., Inc., which acknowledged that the word "nigger" is "perhaps the most pejorative word in the discrimination context," but held that one uncorroborated statement by a supervisor was not sufficient to avoid summary judgment). No. 01-cv-695 (ADM/AJB), 2003 WL 288470, at *8 (D. Minn. Feb. 7, 2003). However, in applying the Harris factors to the present case, this Court reaches a different result.

It is true that the discriminatory conduct was infrequent, having occurred only one time. The severity of the comment "stupid nigger," which was made directly to Bailey, cannot be overstated. The conduct was not physically threatening, but Bailey testified at her deposition that she felt humiliated, and this feeling was objectively reasonable. The conduct arguably interfered with Bailey's work performance because it caused her to cry and contributed to the subsequent, escalated interaction with Adams, which led to her dismissal from the premises. Furthermore, the statement was directly related to Bailey's work performance, insinuating that she was a "stupid nigger" for not getting the trash from other employees' offices. In conclusion, the Court finds that Bailey has come forth with sufficient evidence to show that Adams' comment was severe enough to constitute racial harassment. This result is not inconsistent with Faragher v. City of Boca Raton, in which the Supreme Court implicitly acknowledged that a single incident, if "extremely serious," could be sufficient to alter a term or condition of employment. 524 U.S. 775, 788 (1998).

**b. The Causal Nexus**

Neither party discusses causation as a McDonnell-Douglas factor in their memoranda. (Pl. Mem. Opp. Mot. Summ. J. at 25-30 & n.11; Industrial Mem. Supp. Mot. Summ. J. at 14-18; Multek Mem. Supp. Mot. Summ. J. at 13-19). However, the Court can infer a causal connection between

the harassment and Bailey's status as a member of a protected group because the harassing conduct included the word "nigger," which is a crude reference to Bailey's protected status.

c. **<u>Whether the Harassment Affected a Term, Condition, or Privilege of Employment</u>**

As with the previous factor, neither party addresses this factor in their memoranda. (Pl. Mem. Opp. Mot. Summ. J. at 25-30 & n.11; Industrial Mem. Supp. Mot. Summ. J. at 14-18; Multek Mem. Supp. Mot. Summ. J. at 13-19). The Court reiterates that it is Bailey's burden on summary judgment to establish each and every element of her claim. However, upon independent review of the evidence, in the light most favorable to Bailey, the Court finds that she does not have evidence that Adams' comment affected a term, condition, or privilege of her employment. Bailey's own deposition testimony was that Industrial and Multek did not want her to return to work because she filed a complaint against Adams. While this evidence supports her reprisal claims, it does not relate to her hostile work environment claims. Therefore, Defendants are entitled to summary judgment on Bailey's hostile work environment claims under Title VII, the MHRA, and § 1981. Bailey has not established a prima facie case of race discrimination based on a hostile work environment.

Even if Bailey had met her prima facie burden, Defendants have offered legitimate, nondiscriminatory reasons for their actions. According to

Multek, Bailey created a substantial disruption at the workplace and refused an order to leave the facility. According to Industrial, Bailey was insubordinate to Josephes, had acted in a disruptive manner to both Multek employees and to Josephes, and had failed to provide I-9 paperwork proving her eligibility to work. The burden of production now shifts to Bailey to show that these reasons were a pretext for discrimination. E.g., Williams, 2003 WL 1571559, at *10. Bailey has offered no additional record evidence establishing that these reasons were pretextual in the context of her race discrimination claims.[1] (Pl. Mem. Opp. Mot. Summ. J. at 25-30.) Thus, Bailey's claims of hostile work environment based on race discrimination fail as a matter of law. Id.

### C. Bailey's Reprisal Discrimination Claims Under Title VII and the MHRA Against Multek

The language of the MHRA mirrors Title VII, which prohibits employers from retaliating against employees who oppose unlawful employment practices. Smith v. Ashland, Inc., 250 F.3d 1167, 1173 (8th Cir. 2001) (citing Minn. Stat. § 363.03, subd. 7). The McDonnell Douglas burden-

[1] Although Bailey does present evidence that the reasons were pretextual with respect to her retaliation claims, that evidence necessarily relates only to those claims. For example, Bailey relies on Josephes' statement that Multek did not want Bailey to return because of "the incident . . . the altercation involving the alleged discriminatory comment and the alleged failure to follow her supervisor's directive." (Josephes Dep. at 50.) This "incident" or "altercation" arguably could include Bailey's complaint to Rector. However, this evidence suggests only that the complaint, not Bailey's race, was a motivating factor in Multek's decision.

shifting analysis governs the Court's consideration of this claim. E.E.O.C. v. Kohler, Co., –F.3d –, 2003 WL 21543770 (8th Cir. Jul. 10, 2003). To establish a prima facie case of retaliation, Bailey must show (1) a complaint of discriminatory treatment, (2) subsequent adverse action by Multek, and (3) a causal link between the complaint and the adverse action. Smith, 250 F.3d at 1173 (citations omitted). Bailey has established that she complained about Adams' comment to Rector. Bailey has also established that Rector took her access card and sent her home, and that Multek requested that Bailey not return to work at its facility. Thus, Bailey has established the first two prongs. To prove a causal connection, Bailey relies on Josephes' deposition testimony that Multek did not want Bailey to return because of "an incident." Bailey argues that the "incident" necessarily included her complaint to Rector, and the link between the complaint and the adverse action is thereby established. Bailey also argues that the temporal proximity between the complaint and the action proves causation. In Smith v. Allen Health Sys., Inc., the Court found the length of time between complaint and adverse action to be important. 302 F.3d 827, 833 (8th Cir. 2002) (mentioning that a plaintiff must make only a "minimal showing" as required by McDonnell Douglas before an employer must justify its actions). The Court finds that Bailey has shown a causal link and met her prima facie burden.

To refute Bailey's claim, Multek has presented legitimate, nondiscriminatory reasons for its action. Bailey created a substantial disruption at the workplace and refused an order to leave the facility. Now, Bailey must present evidence (1) creating a fact question as to whether Multek's reason was pretextual and (2) creating a reasonable inference that Multek acted in retaliation. Id. (citation omitted). While a prima facie case may be strong enough to meet this requirement, id. at 835, Bailey's is not. Furthermore, at this stage, Bailey cannot rely on mere temporal proximity. Id. at 834 (citing Sprenger v. Federal Home Loan Bank, 253 F.3d 1106, 1113-14 (8th Cir. 2001)).

Bailey has offered evidence to create a fact question as to whether Multek's reason was pretextual. She disputes that she caused a disruption in the workplace. In her deposition, Bailey admitted that she cried, but she denied using profanity, yelling, or speaking loudly. Bailey has also presented evidence creating a reasonable inference that Multek acted in retaliation. Josephes testified that Multek did not want Bailey to return because of "the incident . . . the altercation involving the alleged discriminatory comment and the alleged failure to follow her supervisor's directive." (Josephes Dep. at 50.) This "incident" or "altercation" arguably could include Bailey's complaint to Rector. Thus, Multek is not entitled to summary judgment on Bailey's reprisal discrimination claims.

**D. Bailey's Reprisal Discrimination Claims Under Title VII and the MHRA Against Industrial**

Bailey has established a prima facie case of reprisal discrimination against Industrial. First, she complained of discriminatory treatment to Josephes on the morning after the incident. Second, Bailey has shown an adverse employment action by Industrial. According to Bailey, Josephes told her the morning after the incident that they would not place her in another position. Bailey's employment with Industrial was terminated formally eleven days later on February 11, 2002. Industrial relies heavily on Scroggins v. University of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000), for its holding that more than a temporal connection is required to create a genuine question on retaliation. However, the Smith case cited in Part IV.C. above was decided subsequent to Scroggins and contains a comprehensive discussion of this issue. See Kohler, 2003 WL 21543770, at *5. Here, viewing the evidence in the light most favorable to Plaintiff, Industrial made the decision to terminate Bailey's employment the same day that she complained of the conduct. Thus, Bailey has made a prima facie case of reprisal discrimination.

Industrial offers several legitimate, nondiscriminatory reasons for its actions: because Bailey was insubordinate to Josephes, acted in a disruptive manner to both Multek employees and to Josephes, and failed to provide I-9 paperwork proving her eligibility to work. Bailey must now present evidence (1) creating a fact question as to whether Industrial's reasons were

pretextual and (2) creating a reasonable inference that Industrial acted in retaliation. Bailey cannot satisfy her burden with respect to her I-9 paperwork. At the termination of Josephes' meeting with Bailey, Josephes determined that Bailey would not work for them again in part because of her failure to update her I-9. (Josephes Dep. at 36.) Bailey has no evidence to refute this testimony and thereby create a fact question. Thus, because Industrial has come forth with a legitimate, nondiscriminatory reason for the adverse employment action, which Bailey has not shown to be pretextual, Industrial is entitled to summary judgment on the reprisal discrimination claim.

Even if Bailey had shown the above reason to be pretextual, Bailey also has not created a fact question as to the tenor of the meeting with Josephes. Although Josephes' account of the meeting is more intense, Bailey's own testimony establishes that she was emotional, crying, and upset, and that she engaged in a tug-of-war over paperwork. Nor has Bailey come forth with additional evidence creating a reasonable inference that Industrial acted in retaliation. Rather, Bailey merely relies on the same evidence she used to make her prima facie case against Industrial. Bailey's reprisal claims against Industrial fail as a matter of law.

### E. **Bailey's Aiding and Abetting Discrimination Claim against Multek Under Minn. Stat. § 363.03, subd. 6**

Although Multek moved for summary judgment on this claim, (Multek Mem. Supp. Mot. Summ. J. at 21-22), Bailey did not respond to this

aspect of Multek's motion in her opposition papers. Thus, because Bailey has not even attempted to establish the elements of this claim, Multek is entitled to summary judgment. In addition, Bailey did not establish a MHRA claim of discrimination against Industrial, and her aiding and abetting claim against Multek therefore necessarily fails. Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1081 (D. Minn. 1998).

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1) Defendant I.G. Incorporated's Motion for Summary Judgment (Docs. No. 48 and 62) should be **GRANTED** as to all claims against it (Counts I, II, III, V, and VI);

(2) Defendant Multek, Inc.'s Motion for Summary Judgment (Doc. No. 53) should be **GRANTED** as to Counts I, II, IV, and V, but **DENIED** as to Counts III and VI.

Dated: July 17, 2003

JONATHAN LEBEDOFF
Chief United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by

August 5, 2003, a writing which specifically identifies those portions of this Report to which objections are being made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.